Haynes, J.
This is a case where suit was brought against the defendant, The.Cincinnati, Hamilton & Dayton Railroad Company, for the killing of Mrs. Wells at a road-crossing. It was heard by a jury, and at the close of the plaintiff’s testimony a verdict was directed for the defendant. Thereupon the plaintiff prosecuted his suit to this court. In addition to whathasbeen said by Judge Scribner in the case of Myers v. The Village of North Baltimore, that has just been decided, I wish to call attention to the- basis of the decision of the court. At the time of the adoption of the code, section 372 provided when an action might be dismissed, and then says that in all other cases, upon the trial of the action, the decision must be upon the merits, and that was supposed to require that all cases should be submitted to the jury. Afterwards, an act passed in 1858, which is discussed in the case of Stockstill v. The Dayton & Michigan Railroad Company, 24 Ohio St. 83. In that case the court discusses the question. Judge White says: “After an introduction of the plaintiff’s evidence, the defendant moved t.he court to arrest the testimony from the jury and non-suit the plaintiff. The court being of the opinion that the testimony adduced was.not sufficient in law to sustain the action, granted the motion, as the record states, ‘upon the *341 merits of said action/ and rendered judgment that the defendant go hence without day and recover of the plaintiff its costs.” “ The main question,” he says, “ is as to the effect of section 4 of the act to relieve the district court, etc., passed April 12, 1858, upon section 372 of the code of civil procedure. For the plaintiff in error it is claimed that section 4 of the act confers no authority on the court of common pleas as to the mode of conducting the trial of a cause, in addition to what the court could exercise under the code; while the counsel for the defendant in error contends that the effect of the section is to restore the common law remedy of non-suit, with all its incidents and consequences, as understood in this state prior to the adoption of the code.
“Our conclusions are as follows:
“First. — That section 4 of the act of April 12,1858, which gives the right of either party to except to the opinion of the court, on a motion to direct a non-suit and to arrest the testimony from the jury, does not, by implication, repeal or modify the provision in section 372 of the code, which declares that, upon the trial of the action, in all cases, such as therein specified, the decision must be upon the merits.
“Second. — That, under the act of April 12, 1858, the court is authorized, in a proper case, to arrest the testimony from the jury and render judgment for the defendant. The judgment in such case, however, has not the effect of a non-suit at common law, but is, under the provisions of the code above referred to, a decision of the action upon the merits. It is substantially the same as a judgment tor the defendant on a demurrer to the plaintiff’s evidence at common law, or the submission of the case to the jury under instructions to return a verdict for the defendant, the same result being reached in either case.
“Third. — If the case tends, in any degree, to prove all the facts which it is incumbent on the plaintiff to establish, in order to maintain his action, he has a right to have the weight and sufficiency of the evidence passed upon by the jury, andit is error for the court to grant the motion and render judgment against him. Without undertaking to set out the evidence, we deem it sufficient to say that the circumstances relied on to show negligence on the part of the defendant in. operating the *342 train, as well as the evidence tending to show fault in the plaintiff contributing to the injury, were such as to entitle him to have the facts found by the jury. In our opinion the court erred in withdrawing the evidence from their consideration.”
Then again in 41 Ohio St., at page 438, the court say: “ Where there is evidence tending to prove negligence on the part of the defendant, and also evidence from which the proper inference to be drawn as to the fault on the plaintiff’s part is doubtful, it should be submitted to the jury to determine whether the plaintiff was injured by his own fault, or that of the defendant.” And in the opinion, the court say : “ In order to. maintain his action, it was incumbent upon the plaintiff, Howell, to prove that he was injured through the fault of the defendants; and he could not recover for his in-' jury, if he in any degree contributed to it by his own negligence. But whether negligence can be imputed to a defendant, or contributory negligence to a plaintiff, is generally a mixed question of law and tact, to be submitted to the jury, under proper instructions from the court. In a proper case, the court may take from the jury the evidence given by the plaintiff, and render judgment for the defeudant, or may attain the same end by submitting the case to the jury, with instructions to return a verdict for the defeudant. But, as is said in Stockcstill v. D. M. R. Co., 24 Ohio St. 83, if the evidence tends in any degree to prove all the facts, which it is incumbent bn the plaintiff to establish in order to maintain his action, he has a right to have the weight and sufficiency of the evidence passed upon by the jury, and it is error for the court to grant the motion, and render judgment against him.” And in an action to recover for an injury, where there is evidence tending to prove negligence on the defendant’s part, and also evidence from which the proper inference to be drawn as to the fault on plaintiff’s part is doubtful, it should be left to the jury to determine whether the plaintiff was injured by his own fault or that of the defendant;] and they overrule the action of the court in that case.
*343 We think that establishes the law in Ohio, as to the duty of the trial court. That where there is evidence tending to prove negligence of one party or the other,, the case should be submitted to the jury. The time for the judge of the trial court to act is when the case comes before him on a motion for a new trial. Then, after he examines into the testimony, if the verdict is not sustained by sufficient evidence, it is the duty of the court to set aside the verdict.
Coming to this case, and trying the case by the |est laid down by the Supreme Court, we look at the pleadings and facts.
The petition avers that the plaintiff is the administrator of the estate of his wife, Jessie L. Wells; that the defendant is a corporation and runs a railroad, which passes through the counties of Wood and Lucas, from North Baltimore, Wood county, to the city of Toledo, and other points, with its various depots, warehouses and sidetracks, on and along the line of said road. That Jesse L. Wells, and this plaintiff, were husband and wife. That said railroad, in passing on its line, through Liberty township, in said county, crosses a public-road on the level with said railroad, and near to a station on said railroad, called Dunham, where there is also erected a. sidetrack with switches, guard-rails and switch-stands. That said public road is much traveled and in a very thickly populated community. Very many teams, and horses, and wagons, and pedestrians, cross the line of said railroad, on said public road at all times during the day and night, and is one of the most traveled thoroughfares in the county. That the safety of the public, crossing said track on said public road, requires that there should be. erected at said crossing, a sign, with large distinct letters placed thereon, to give notice of the proximity of the railroad, and to warn persons to be on the lookout for the locomotive. The safety of the public also requires that when the railroad trains of said company approaches said crossing, it should have attached to each locomotive engine, passing upon its road, a bell, of the ordinary *344 size, in use on such engine, and a steam whistle, and the engineer, or person in charge of such engine in motion, upon approaching said crossing, and upon a level thereof, to sound said whistle, at a'distance of at least eighty, and not further than one hundred rods, from the place of said crossing, and to ring said bell continuously until the engine passes said crossing. That the safety of said traveling public also requires that when the train on the road, run in the nightseason, shall have a headlight attached to such engine, of sufficient power that it «will throw a light a long way in advance of the engine, that those operating the road may see objects ahead, and that others may be warned of the approach of said train. That said Jessie L. Wells, on the 30th day of October, 1893, and in the early evening of said day, between the hours of six and seven o’clock, and when it was quite dark, was passing on and along said road with a horse and buggy, and without any fault or negligence on her part, drove up to and upon said crossing, and at the same time the train of the defendant, on its regular trip to the north from North Baltimore to Toledo, came upon said crossing. That the said defendant did not sound the whistle on said locomotive, when it was not less than eighty, nor more than one hundred rods from said crossing, and negligently and unlawfully failed to blow or sound said whistle until about the time the train came upon said crossing. That the defendant unlawfully and negligently refused and failed to ring any bell upon said locomotive before or up to the time it came to said crossing. That said defendant negligently failed and neglected to. have a headlight upon said locomotive that would throw a light a great distauce in front of the same. That said defendant unlawfully and negligently neglected to have erected, at said crossing, a sign with large and distinct letters placed thereon, to give notice of the proximity of the railroad, and to warn persons to be on the lookout for the locomotive, but said company failed and neglected to place any sign at said crossing. That said crossing was on the level with said public highway, whereby said de *345 cedent was in no manner warned of the coming of said train, or that she was approaching said crossing, and whereby, on account of said negligence, and other negligence to plaintiff, unknown on the part of said defendant, said locomotive struck and killed her.
The defendant denies these acts of negligence, and says that the death of plaintiff ’a decedent was caused by her own negligence in approaching said railroad crossing, and in attempting to pass over the same; and by the negligent and careless manner in which she managed and controlled the said horse and buggy, and not by reason of any negligence or carelessness of this defendant.
The testimony of the plaintiff tended to prove that the road of the defendant run north and south ; that plaintiff’s decedent had gone to visit some friends, or relatives, early in the day, and was returning on the evening in question, the 30th of October, between six and seven o’clock; that she approached the road crossing from the west, for the purpose of reaching her own residence, which was situated sixty or seventy rods north-east of the crossing, and a little off the main road; that the night was very dark; that the wind was blowing very strongly from the west, or little north of west. It further shows that on this railroad, running north and south, as it approaches this road crossing, there is a little bend in the railroad some four or five hundred feet in length, whereby the road, as it approaches the highway, turns a little to the north, and then turns a little to the west, so that the road crosses at or near the center of this concave. There is a station called Dunham there, but that station consists simply of the fact that people are let on and off at that point. There are no buildings at the station, nor in that neighborhood. There is a side-track there that is sixty or seventy rods long, and on that there are sometimes cars standing, but whether or not there was on this night, nobody knows.
The testimony of the plaintiff tended to prove that this train was coming from the south to the north that as it ap *346 proached the crossing it was seen by some parties, witnesses who were called, and they say they could see the train and could see the lights in the windows. Two witnesses testified more directly. One is the plaintiff himself, who[had, just before the train came along, stepped out of his house ■ and was standing by a tree near the house, looking for his wife. He saw the train coming, and saw the lights in the windows of the passenger ears, but, he says, there was no headlight; that he saw none, and saw the train as it came [along. He first saw it some forty rods as it came to the crossing, and as it passed the crossing the whistle was blown, and that was the first it was blown, he says, from the time he saw it. He did not hear the bell ring, but he was sixty, or seventy rods away. A witness by name of Sprague, who was traveling on this road, testified that a lady in a buggy passed him near this crossing after he had passed the dwelling of a Mr. Mercer, a brother-in-law of the plaintiff, which was situated some twenty rods west of the railroad crossing. As the buggy passed along, he said “good evening,” and the person in it said “ good evening,” and he noticed it was the face of a lady. After she passed him she started the horse on a. little trot. The night was dark and he saw the train coming and saw the lights from the windows of the cars, but saw no headlight. He was in a position where, according to his own testimony, he would be looking at the train and would be looking at it from a very little angle to the east. That is to say, as it came upon this curve, it would pass a little to the east, so that the sides of the cars would be exposed to him. In his cross-examination he says he did not see the headlight; he did not hear any whistle blown until they got right down to the crossing, nor did he hear the bell ring, but the wind was from him.
A Mr. Mercer was called. He and his wife were going to church; his wife is a sister to the decedent; they met her near their house as they were driving to church and as she was coming home. The night was windy and cold. She had *347 a lap-robe over her and a veil tied down over her ears. Mrs. Mercer had a lantern in her buggy, and as they passed saw her face. They could see as they went on their way, this train some half of a mile, and they saw the lights in the windows from the distance. They said that the whistle was sounded at a point where they passed some woods.- These woods are said to be some two hundred rods from the track. They did not know anything about the accident until some time after. There were other witnesses who testified, who were in the neighborhood. One was living about forty rods away and-was just sitting down to his supper. He heard the whistle and beard the engine strike the switch which would make it thirty or forty rods south on the railroad, but he did not hear any bell. He did not know anything further about the train until he heard of the accident a few minutes after. There was another party who was approaching in a buggy who testified to hearing that train and saw it coming, and says it whistled as they approached the station at about the usual distance from the station, and then they whistled again as they approached the crossing. I should have said in regard to Sprague, that he says when the train crossed the road be was not more than twenty-five or thirty rods away, and that the whistle did not sound until it got to the crossing.
Now, that is a general outline of the testimony, and at the close of the testimony the court directed a verdict to be returned for the defendant, and in that we think the court erred. We think under the rules of law laid down by the Supreme Court that it was the duty of the court to have submitted this case to the jury. There is, of course, a question as to whether the plaintiff was negligent. There is a presumption that all parties are careful. Negligence is never presumed. We don’t know whether this lady as she crossed the track saw the train or not, and it never can be known. The testimony is that the country was open and the train could be seen a great distance, one of the witnesses testifying that it could be seen a half mile. We don’t know what passed through her mind *348 in regard to the train. The train was approaching from the south and she was coming towards it from the west, and as it was approaching, experience will show that the lights in the ear windows could not be seen a great distance, but the headlight could be seen a great distance. If there was no headlight on the engine, and it being a dark night, one can understand that if she did look that she might have passed on to that crossing and to her death, acting, as she supposed, with due caution and with full belief that the train was further away from the crossing, and that she could safely cross before the train got to her. At least, these are the facts that should have been submitted to the jury : Whether the bell was rung at the proper distance, and if it was not rung, whether it tended to cause this disaster — whether the whistle was sounded, whether a headlight was on the engine, and if not, whether it was the duty of the company to have it there, and whether these omissions tended to cause the disaster.
E. T. Dunn and H. F. Burkett, for plaintiff.
R. D. Marshall and F. A. Baldwin, for defendant.
All of these facts have .an important bearing and should have been submitted to the jury for their decision, and after the case was ended, and a motion was made for a new trial, then the court could have passed upon the question as to whether the .evidence was sufficient to sustain a verdict.
The verdict will be set aside and the cause remanded for a new trial.